IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A SILVER IPHONE PRO WITH A BLACK CASE, CURRENTLY LOCATED AT HSI ST CROIX COMPUTER FORENSIC ANALYST LABORATORY - TEMPORARY STORAGE | Case No. 25-mj-19 |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Matthew Bell, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with Homeland Security Investigations ("HSI"), assigned to the St. Croix, U.S. Virgin Islands ("USVI") office. I have been employed as a Special Agent since August 2023. Prior to becoming a Special Agent, I was employed as a helicopter pilot and maintainer for the Army National Guard with responsibilities that included supporting law enforcement operations for the counter drug task force and for search and rescue. I graduated from the Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training Program at the Federal Law Enforcement Training Center in April of 2024. My academy training included the use of media devices, such as cellphones, as an

investigative tool. I graduated from Liberty University and obtained a Bachelor of Science degree in Criminal Psychology in 2021.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is a silver iPhone Pro with a black case, (the "Device"). The Device is currently located at the HSI St. Croix Computer Forensic Analyst laboratory located at 23 Estate St Georges Hill, St. Croix, USVI 00850.

5. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

### PROBABLE CAUSE

6. On Thursday, October 9, 2025, at approximately 1600 hours, Customs and Border Protection (CBP) was performing an operation on American Airlines incoming flight number AA 2281 from Miami, FL to St. Croix, VI. During the inspection, Non-Intrusive Intensive ("NII") examinations were being conducted on all checked bags onboard the flight by the St. Croix CBP Enforcement Team, which consisted of X-raying the bags to check for anomalies. While conducting the NII exam, anomalies were detected on checked bags belonging to TRISTIN CARR ("CARR") as identified on the baggage tags American Airlines number 8001832617 and 8001832590 attached to the luggage. According to the baggage tags—American Airlines number 8001832617 and 8001832590 bearing CARR's name—the bags were checked in from Tampa International Airport destined to Henry Rohlsen Airport on St. Croix,

2

USVI via Miami. The Enforcement Team placed the baggage on the St. Croix baggage claim carousel and monitored to see who would retrieve the luggage. The luggage was retrieved from the baggage claim carousel by CARR.

7. The Enforcement Team escorted CARR into the secondary inspection area for further inspection. A physical search of the luggage was conducted revealing individual bundles wrapped in vacuum-sealed bags containing a green leafy substance. The green leafy substance tested positive for marijuana weighing a total of approximately 6.14 kilograms. I know from training and experience that this amount of marijuana is for distribution and not personal use.

8. HSI Special Agent ("SA") Matthew Bell and SA Christoper Pastwik responded to the incident located at Henry E. Rohlsen airport in St. Croix. HSI SAs placed CARR under arrest and escorted CARR to HSI RAC St. Croix for processing. SA Bell seized CARR's cellphone under Border Search Authority.

9. Based on the aforementioned facts, I believe there is probable cause that CARR is involved in a smuggling conspiracy that involved the transportation of premium narcotics from Florida into the United States Virgin Islands for distribution in violation of 21 U.S.C. §§ 841(a) and 846. An examination of the Device would allow SAs to potentially identify coconspirators, detect other smuggling ventures, and determine knowledge of illegal acts.

10. Based on the information provided and my experience, I know that cellular phones are used by criminals to organize, plan, and commit criminal activities. Additionally, I know that cellular phones are used by smugglers to coordinate the smuggling and distribution of narcotics and other illicit materials.

11. Based on my training and experience I know cellular phones use voice and data communication through radio signals and send and receive short messages (text messages) and multimedia messages. Cellular phones are capable of creating and storing data like contacts, call logs, address, messages, emails, chats, social media content, third party application data, digital photographs, and video. Cellular phones are also capable of acting as Global Positioning Systems.

12. Based on my training and experience I know mobile devices are capable of using third-party applications that allow the user to send and receive messages, send voice messages, and make phone calls.

13. Based on my training and experience I know that mobile devices are also capable of using third party applications that allow the posting and viewing of posted messages on public and private domains.

14. The Device is currently in the lawful possession of Homeland Security Investigations. It is currently in storage at HSI St. Croix Computer Forensic Analyst Laboratory. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of HSI.

## TECHNICAL TERMS

15. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication

4

through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

5

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

16. Based on my training, experience, and research I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, and GPS navigation device. It also contains contacts, call logs, address, messages, emails, chats, social media content, third party application data, and other data. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the Device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

17. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the

6

Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

18. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file. Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.

   b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review

team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

19. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

20. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

*[Intentionally Left Blank]*

## CONCLUSION

21. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*Matthew Bell*

MATTHEW BELL
SPECIAL AGENT
HOMELAND SECURITY
INVESTIGATIONS

Subscribed and sworn to before me via video conference.
on November 14, 2025

_____
HONORABLE G. ALAN TEAGUE
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF THE VIRGIN ISLANDS

## ATTACHMENT A

## IDENTIFICATION OF ITEM TO BE EXAMINED

1.  The property to be searched is a silver iPhone Pro with a black case, (the "Device") seized from Tristin CARR on October 9, 2025. The Device is currently located at the HSI St. Croix Computer Forensic Analyst laboratory located at 23 Estate St. Georges Hill, St. Croix, USVI 00850.

The Device was powered on when seized and has been powered on since the seizure on October 9, 2025. The Device was held in the HSI Field Office evidence vault in St. Croix, USVI, where it has been located since the initial seizure.

The warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

11

**ATTACHMENT B**

1. <u>Description of Evidence to be Searched for:</u>

All data on the Device described in Attachment A that relates to violations of 21 U.S.C. §§ 841(a) (possession with intent to distribute a controlled substance) and 846 (conspiracy to possess with intent to distribute a controlled substance), by Tristin CARR ("CARR"), and other co-conspirators both known and unknown to your affiant at this time, including:

   a. lists of customers and related identifying information;

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. identities of known or unknown co-conspirators in the aforementioned violations;

   d. information regarding any alias(es) being used by CARR, or any co-conspirator;

   e. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   f. any information recording CARR's schedule or travel from 2023 to the present;

   g. all bank records, checks, credit card bills, account information, and other financial records;

   h. evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

   i. information identifying additional properties (to include vehicle and maritime vessel storage) or PO boxes belonging to or being used by CARR or a co-conspirator, under their names or under any possible alias(es);

   j. text messages, call records, contacts, photographs, social media information, messages (video, audio or text), contacts, pictures, videos, calendar entries, GPS, and emails pertaining to the violations described in this affidavit; and

   k. All records and communications that in any way constitute evidence of or relate to the violations described in this affidavit.

12

As used above, the term "data" includes all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage (such as flash memory or other media that can store data) and any photographic form.

2. <u>Information to be Seized by the Government:</u>

All information described above in Section 1 that constitutes evidence, fruits, contraband, and instrumentalities of violations of Title 21, United States Code, §§ 841 (a) Possession with Intent to Distribute a Controlled Substance and 846 Conspiracy to Possess with Intent to Distribute a Controlled Substance involving CARR or a co-conspirator.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation and outside technical experts under government control) are authorized to review the records to locate the things particularly described in this Warrant.